UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
DIEGO BEEKMAN MUTUAL HOUSING                          :
ASSOCIATION HOUSING DEVELOPMENT                       :
FUND CORPORATION HDFC,                                :
                                                      :
                                  Plaintiff,          :
                                                      :
                   v.                                 :
                                                      :
DISH NETWORK, L.L.C, *et al.*,                        :
                                                      :
                                  Defendants.         :
                                                      :
------------------------------------------------------X

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                  │
│ DATE FILED: March 15, 2016           │
└─────────────────────────────────────┘

15 Civ. 1094 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Diego Beekman Mutual Housing Association Housing

Development Fund Corporation HDFC ("Diego Beekman," or "Plaintiff") has

filed suit against two satellite television service providers, Dish Network Service

L.L.C. ("Dish") and DirecTV, L.L.C. ("DirecTV," and together with Dish,

"Defendants"), as well as ten John Doe agents, employees, or subcontractors of

Defendants.  Plaintiff's Third Amended Complaint (or "TAC") asserts claims for

common law trespass and negligence, and seeks compensatory, consequential,

punitive, and treble damages.  Defendants have each filed motions to dismiss

Plaintiff's TAC, and to recover the attorneys' fees and costs incurred in the

preparation of their motions to dismiss Plaintiff's now-defunct Second

Amended Complaint (or "SAC").  For the reasons stated in this Opinion,

Defendants' motions to dismiss are granted, and their motions for attorneys'

fees and costs are denied.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff is the fee title owner of thirty-eight residential apartment

buildings in Bronx County, New York.  Plaintiff alleges that Defendants,

"through their agents, servants, employees, contractors or subcontractors,"

entered Plaintiff's buildings and installed a total of 377 satellite dishes, as well

as antennae and other equipment.  (TAC ¶ 7 & Ex. 1).  Plaintiff specifically lists

302 satellite dishes bearing the DirecTV mark, and 75 dishes bearing the Dish

mark.  (*Id.* at Ex. 1).  Plaintiff alleges that Defendants did not seek or receive

permission from Plaintiff prior to the installation of any of this equipment.  (*Id.*

at ¶ 11).

Plaintiff alleges substantial damage to its buildings as a result of the

improper installation of Defendants' respective satellite dishes.  Specifically,

Plaintiff lists "[e]xtensive damage to the roof and exterior walls of the

Buildings," which damage has led to "[w]ater leakage and seepage within

various portions of the Buildings."  (TAC ¶¶ 17, 20).  Plaintiff attributes these

---

[1]    The facts contained in this Opinion are primarily drawn from Plaintiff's Third Amended
Complaint (the "TAC") (Dkt. #41), and are taken as true for purposes of this motion.
*See Faber* v. *Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a
complaint for failure to state a claim, the court will "assume all well-pleaded factual
allegations to be true" (internal quotation marks omitted)).  For convenience,
Defendants' briefs in support of their respective motions to dismiss (Dkt. #49-50, 53,
55) will be referred to as "[Name] Br."; Plaintiff's combined opposition brief (Dkt. #60) as
"Pl. Opp."; and Defendants' reply briefs (Dkt. #64, 66) as "[Name] Reply."

Facts pertaining to Defendants' motions for attorneys' fees are drawn from the
declarations submitted in support of and in opposition to those motions, which
declarations are referred to using the convention "[Name] Decl." or "[Name] Reply Decl."
Defendants' briefs in support of their motions for fees and costs are referred to as
"[Name] Fee Br." (Dkt. #51, 57, 59); Plaintiff's opposition is referred to as "Pl. Fee Opp."
(Dkt. #62); and Defendants' reply briefs are referred to as "[Name] Fee Reply" (Dkt. #63,
68).

conditions to Defendants' improper construction, installation, and maintenance of its satellite dishes, antennae, and other unspecified "apparatuses." (*Id.* at ¶ 17).  Plaintiff states that it will need to hire a contractor to remove Defendants' installations, in order to repair and prevent further occurrences of the "flooding, accumulations of water, mold, dampness, discolorations, [and] foul and other musty odors" caused by the improperly installed and maintained equipment.  (*Id.* at ¶¶ 20-21).

Finally, Plaintiff asserts that "Defendants had both actual and constructive notice of the conditions aforedescribed and/or the conditions have existed for so long a period of time that the Defendants knew or should have known of such conditions." (TAC ¶ 22).

## B.    Procedural Background

Plaintiff filed its initial Complaint in New York State Supreme Court, Bronx County, on January 6, 2015. (*See* Dkt. #1).  On February 17, 2015, DirecTV removed the case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a) and 1441.  (*Id.*).  Plaintiff filed its First Amended Complaint on April 10, 2015 (Dkt. #16), and, after the parties had exchanged pre-motion letters and the Court held a conference on Defendants' proposed motions to dismiss, Plaintiff filed its Second Amended Complaint on May 26, 2015 (Dkt. #27).

On the consent of all parties, the Court set a briefing schedule for Defendants to file their respective motions to dismiss Plaintiff's SAC on June 11, 2015.  (Dkt. #29).  On June 23, 2015, DirecTV filed its motion to

dismiss the SAC, and Dish filed its motion to dismiss on the following day. (Dkt #34-35, 37-38).  Plaintiff then filed its Third Amended Complaint, without having received consent from its adversaries or leave from the Court, on July 21, 2015.  (Dkt. #41).  The Court struck the improperly-filed TAC, and directed Plaintiff to either "obtain Defendants' written consent to the amendment or explain to the Court why justice required the Court to grant leave to amend." (Dkt. #42).  After receiving a written explanation for Plaintiff's improper filing, the Court granted Plaintiff's request to file its TAC, noting that, "[a]bsent compelling cause, this will be Plaintiff's last amendment."  (Dkt. #48).  The Court further stated that, "[b]ecause Plaintiff's delinquency has caused some cost to Defendants … the Court will entertain Defendants' applications for costs associated with the initial motion to dismiss[.]"  (*Id.*).

Defendants filed their motions to dismiss Plaintiff's TAC on August 27, 2015 (Dkt. #49, 53), as well as separate motions seeking attorneys' fees and costs incurred in preparing their previously-filed motions (Dkt. #51, 57). Plaintiff filed its responses to Defendants' motions — in regards to both dismissal and attorneys' fees — on September 15, 2015 (Dkt. #60, 62), and Defendants concluded the briefing on October 12, 2015, with the filing of their respective replies (Dkt. #63-64, 66, 68).

## DISCUSSION

**A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

## B.     Plaintiff Fails to State a Claim for Trespass

### 1.     Applicable Law

A claim for trespass to real property requires "an intentional entry onto the land of another without justification or permission." *Marone* v. *Kally*, 971 N.Y.S.2d 324, 327 (2d Dep't 2013) (citation omitted).  To constitute a trespass, the entry must "involve[] an invasion of a person's interest in the exclusive possession of land." *Copart Indus., Inc.* v. *Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 570 (1977).  Indeed, "[t]he essence of trespass to real property is injury to the right of possession." *Bloomingdales, Inc.* v. *N.Y. City Transit Auth.*, 13 N.Y.3d 61, 66 (2009); *accord Romeo* v. *Sherry*, 308 F. Supp. 2d 128, 142-43 (E.D.N.Y. 2004) (citing 104 N.Y. Jur. 2d, Trespass § 10).  Proof of ownership is not sufficient to establish the possessory right required to bring a trespass claim; on the contrary, an action for trespass "may be maintained even against an owner by the one entitled to possession." *Bower* v. *Weisman*, 639 F. Supp. 532, 540 (S.D.N.Y. 1986) (quoting *Meadow Point Properties* v. *Nick Mazzoferro & Sons*, 219 N.Y.S.2d 908, 909 (Sup. Ct. Suffolk Co. 1961)).

### 2.    Analysis

Dish argues that Plaintiff's assertions of trespass amount to no more than "boilerplate — the same kind of threadbare recitals proscribed by *Twombly*, *Iqbal*, and their progeny." (Dish Br. 9 (citations omitted)).[2]  DirecTV contends that Plaintiff's trespass claim fails for the additional reason that Plaintiff has failed to plead its exclusive possession of the properties as to which trespass is alleged.  (DirecTV Br. 8-9).  Plaintiff responds by arguing that it has sufficiently alleged the elements of trespass, including Plaintiff's ownership of and right to repair the property at issue, so as to apprise Defendants of the claims against them.  (Pl. Br. 5-11).

Nowhere in Plaintiff's TAC does Plaintiff claim to be in exclusive possession of the allegedly trespassed-upon buildings.  That deficiency dooms Plaintiff's trespass claim to fail.  Plaintiff argues that, "[w]hile the apartments within the buildings are leased to tenants, the common areas of the buildings, including the roof tops and facades where these installations took place, are all maintained by Diego Beekman." (Pl. Br. 7-8).  This contention fails to save Plaintiff's trespass claim for multiple reasons.  First, and most importantly, the TAC makes no mention of "common areas" or of Plaintiff's right to maintain them, and Plaintiff cannot supplement its fourth attempt at pleading with new facts asserted in its opposition brief.  *See Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a party cannot cure pleading defects

---

[2]    While Dish and DirecTV have individually submitted motions to dismiss, they additionally join in each other's arguments.  (*See* Dish Br. 2; Direct Br. 2).

by advancing allegations in opposition to a motion to dismiss).  Second, even if Plaintiff retained the right to maintain common areas, such right does not constitute exclusive possession (indeed, to consider Plaintiff as being in "exclusive possession" of the buildings' "common areas" would be a contradiction in terms).

The closest the TAC comes to even hinting at some possessory right retained by Plaintiff is its statement that Plaintiff "will be compelled ... to remediate the damage to the Buildings and to render the same habitable and secure and free of all water infiltration." (TAC ¶ 21).  In other words, Plaintiff alleges its duties pursuant to the warranty of habitability that applies to all landlords.  *See* N.Y. Real Prop. Law § 235-b.  A landlord's duty to remediate unsafe conditions is a far cry from the exclusive possession required to maintain an action for trespass — to find otherwise would effectively be to give every landlord standing to sue for trespass, regardless of whether he or she has any possessory interest in the property at all.  *Cf. Cornick* v. *Forever Wild Dev. Corp.*, 659 N.Y.S.2d 914, 916 (3d Dep't 1997) ("A trespass action may only be maintained by one entitled to possess that property; ownership alone is insufficient."); *Stay* v. *Horvath*, 576 N.Y.S.2d 908, 911 (3d Dep't 1991) (finding that a tenant stated a trespass claim against its landlord, where the landlord interfered with the tenant's right of possession).  Furthermore, even a right of entry to repair extending beyond the minimal duty to repair unsafe conditions would not provide the necessary possessory interest: A landlord might reserve

8

the right to enter her tenant's apartment to repair the oven, but she is not, by virtue of that right, also entitled to dictate who gets invited over for dinner.

In sum, Plaintiff fails to allege any possessory interest in the purportedly trespassed-upon buildings, let alone the exclusive possession required to maintain an action for trespass. As a result, Plaintiff's trespass claim is dismissed.

## C. Plaintiff Fails to State a Claim for Negligence Against Defendants

### 1. Applicable Law

A plaintiff asserting a negligence claim under New York law "must establish three elements … [i] the existence of a duty on defendant's part as to plaintiff; [ii] a breach of this duty; and [iii] injury to the plaintiff as a result thereof." *Pasternack* v. *Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (citation omitted). Where "the defendant owes no duty to the plaintiff, the action must fail. Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Drake* v. *Lab. Corp. of Am. Holdings*, No. 02 Civ. 1924 (FB) (RML), 2007 WL 776818, at *2 (E.D.N.Y. Mar. 13, 2007) (quoting *Darby* v. *Compagnie Nat'l Air France*, 96 N.Y.2d 343, 347 (2001), *opinion after certified question answered*, 13 F. App'x 37 (2d Cir. 2001) (summary order)), *aff'd,* 417 F. App'x 84 (2d Cir. 2011) (summary order).

While an employer may be held vicariously liable for the acts that its employees commit within the scope of their employment, an employer is not usually liable for the negligent acts of its independent contractors. *Rivera* v.

9

*Fenix Car Serv. Corp.*, 916 N.Y.S.2d 169, 170 (2d Dep't 2011); *see also*

*Rosenberg* v. *Equitable Life Assur. Soc. of U.S.*, 79 N.Y.2d 663, 668 (1992).

However, this rule is not absolute: Public policy concerns dictate that an

employer may be found liable for its independent contractor's negligence where

the employer

> [i] is under a statutory duty to perform or control the
> work, [ii] has assumed a specific duty by contract, [iii] is
> under a duty to keep premises safe, or [iv] has assigned
> work to an independent contractor which the employer
> knows or has reason to know involves special dangers
> inherent in the work or dangers which should have been
> anticipated by the employer.

*Rosenberg*, 79 N.Y.2d at 668; *see also Robinson* v. *Gov't of Malaysia*, 269 F.3d

133, 145 (2d Cir. 2001).  To determine whether an employer-employee

relationship exists between two parties, courts consider "whether the alleged

employer exercise[d] control over the results produced, or the means used to

achieve the results.  Control over the means is the more important

consideration."  *Chuchuca* v. *Chuchuca*, 890 N.Y.S.2d 573, 575 (2d Dep't 2009)

(quoting *Abouzeid* v. *Grgas*, 743 N.Y.S.2d 165, 166 (2d Dep't 2002)).

    Additionally, where a party cannot be held vicariously liable for an

independent contractor's conduct due to the lack of an employer-employee

relationship, the party may in some circumstances be held directly liable for

negligently hiring, retaining, or supervising its contractor.  *Bellere* v. *Gerics*,

759 N.Y.S.2d 105, 107 (2d Dep't 2003).  Under New York law, a claim for

negligent hiring, supervision, or retention requires, in addition to the basic

elements of negligence, that "the party knew or should have known of the

contractor's propensity for the conduct which caused the injury." *Schiffer* v. *Sunrise Removal, Inc.*, 879 N.Y.S.2d 518, 522 (2d Dep't 2009) (quoting *Bellere*, 759 N.Y.S.2d at 107)).

### 2.   Analysis

Defendants argue that Plaintiff's negligence claim fails as against Dish and DirecTV on the basis of the TAC's failure to plead that either Defendant controlled the actors who negligently installed the offending equipment.   (Dish Br. 6).   Defendants additionally contend that they owed Plaintiff no duty of care.   (DirecTV Br. 9-10).   Plaintiff responds by arguing that it has clearly pleaded negligence, so it need not expressly allege the existence of a duty; and in any event, a duty clearly existed.   (Pl. Opp. 12-14).   More specifically, Plaintiff suggests in its opposition brief that the TAC's lack of any pleaded duty is wholly irrelevant, as "[i]t is clear from a plain reading of the document that Plaintiff's second claim is for negligence, of which duty is an element" — the theory being that, because Defendants were on notice of the negligence charge, they were implicitly on notice that Plaintiff was alleging duty and breach.   (Pl. Opp. 12).

The Court notes, as a threshold matter, that all elements of a claim must be pleaded; they may not be inferred from the recitation of a cause of action's title.   *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks omitted)).   That said, the failure to use the particular

word "duty" is not a *per se* bar to Plaintiff's negligence claim, so long as
sufficient factual matter has been alleged to establish that Defendants did in
fact owe Plaintiff a duty of care.  The TAC falls short, however, in that it fails to
allege facts sufficient to raise its assertions of negligence — and the constituent
elements of duty and breach — above the purely speculative level.

Defendants themselves are not alleged to be the direct tortfeasors:
Rather, the TAC states that "either or both of the Defendants, through their
agents, servants, employees, contractors or subcontractors, including without
limitation John Does 1 through 10 ... entered upon the various Buildings of the
Plaintiff and installed various equipment ... including ... satellite dishes on the
exteriors of Plaintiff's Buildings[.]"  (TAC ¶ 7).  This formulation is problematic;
it is so broad as to encompass every possible theory of employer liability, and
as such fails to provide Defendants with an indication of the grounds upon
which Plaintiff claims entitlement to relief.  While the TAC need not provide
"detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, post-
*Twombly*, "[t]he test is no longer whether there is 'no set of facts' that plaintiff
could prove 'which would entitle him to relief.'"  *Abdelhamid* v. *Altria Grp., Inc.*,
515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (quoting *Twombly*, 550 U.S. at 561).
Rather, a complaint must provide "the grounds upon which [the plaintiff's]
claim rests through factual allegations sufficient 'to raise a right to relief *above
the speculative level.*'"  *Twombly*, 550 U.S. at 555 (emphasis added).  The TAC
in this matter is devoid of any facts, or even a clear statement, indicating the
theory upon which Defendants are alleged to be liable for the negligent

installations performed by the John Does.  Consequently, it fails to raise Plaintiff's right to relief above the merely speculative, and cannot survive Defendants' motion to dismiss.

First, the TAC states that "either or both of the Defendants" acted through the John Does installers to affix equipment to Plaintiff's buildings. Thus the TAC does not even make clear which Defendant is being charged with liability; certainly this falls short of providing Defendants with reasonable notice of the claims against them.  *See* Fed. R. Civ. P. 8(a); *Ideal Steel Supply Corp.* v. *Anza*, 652 F.3d 310, 323 (2d Cir. 2011) (stating that under Rule 8, pleadings must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests").  It is true that New York law permits a Plaintiff to hold two tortfeasors jointly and severally liable where it is unclear how responsibility should be apportioned between two actors; but "[t]he rationale for such liability is that the wrongdoers are considered part of a joint enterprise and a mutual agency 'such that the act of one is the act of all and liability for all that is done is visited upon each.'"  *Matter of Seagroatt Floral Co., Inc.*, 78 N.Y.2d 439, 448 (1991) (quoting *Ravo* v. *Rogatnick*, 70 N.Y.2d 305, 309 (1987)). The TAC presents no facts suggesting that Dish and DirecTV acted in concert such that joint and several liability could appropriately be alleged, nor does it contain any indication that joint and several liability is in fact being asserted, beyond the single phrase "either or both of the Defendants."  Rather, the TAC alleges that Dish and DirecTV are wholly separate companies, with no apparent connection to each other at all (except perhaps as competitors, insofar as both

13

companies are alleged to conduct similar businesses).  (TAC ¶¶ 3-4).  Thus, a joint and several liability theory does not apply to the present matter, and the allegation that "either or both of the Defendants" should be liable for the purportedly negligent installations fails to provide either Defendant with sufficient notice of their potential liability, or to present a claim that rises above the speculative level.[3]

Turning to the TAC's statements regarding the relevant negligent acts, Plaintiff alleges that some unidentified actors carelessly and improperly performed installations on Defendants' behalf, thereby causing significant damage to Plaintiff's property.  (TAC ¶¶ 7, 17).  However, by stating that Defendants acted "through their agents, servants, employees, contractors or subcontractors," the TAC fails to specify under what theory Defendants should be held liable for the actions of these John Doe installers.  (*Id.* at ¶ 7).  The vague nature of Plaintiff's allegation might be remedied if the TAC provided additional information from which the applicable theory of liability could be discerned.  There are several possible theories available: (i) if Defendants have an employer-employee relationship with the negligent actors, the Defendants may be held vicariously liable for their employees' negligence; (ii) Defendants may be found to have a non-delegable duty of care to perform the installations

---

[3]     Plaintiff includes a spreadsheet with its TAC, listing 302 dishes bearing a DirecTV logo and 75 dishes bearing a Dish Network logo as having been removed from Plaintiff's buildings.  (TAC Ex. 1).  However, Plaintiff does not allege the significance of this information:  Whether, for instance, each company only oversees installation of dishes bearing its own brand, or whether customers seeking to use one Defendant's telecommunication — and installation — services can choose to provide equipment produced by the other, is simply not alleged.  Thus, the spreadsheet fails to clarify the TAC's ambiguous assertion regarding each Defendant's liability.

in an appropriate manner, regardless of whether the installers were Defendants' employees; or (iii) Defendants may be found directly liable, not for the installations themselves, but for negligent hiring, retention, or supervision of the John Doe actors. But the TAC provides no basis upon which to discern which, if any, of these theories is being alleged.

Under New York law, "there is no absolute rule for determining whether [an actor] is an independent contractor or an employee." *Makarova* v. *United States*, 201 F.3d 110, 114 (2d Cir. 2000) (quoting *Mace* v. *Morrison & Fleming*, 44 N.Y.S.2d 672, 674 (3d Dep't 1943)). Courts focus their inquiries, however, on the extent to which the employer exercises control over the hired party, and whether the employer has "the right to direct what will be done and when and how it will be done." *Id.*; *accord Jurgens* v. *Poling Transp. Corp.*, 113 F. Supp. 2d 388, 400 (E.D.N.Y. 2000). The TAC alleges virtually nothing about the connection between Defendants and the John Does who installed the relevant equipment, beyond the vague statement that Defendants acted "through their agents, servants, employees, contractors or subcontractors, including without limitation John Does 1 through 10." (TAC ¶ 7).

The TAC does not clearly allege that the actors were "employees," even in conclusory form — a deficiency compounded by the absence of facts from which the Court could discern whether and to what extent Defendants exercised control over the direct actors. Rather, the TAC describes the John Doe parties as "individuals and/or corporations and/or entities … who performed the illegal installations[.]" (TAC ¶ 5). The paragraph of the TAC

describing these "individuals and/or corporations and/or entities" does not allege an employment relationship between the John Does and Defendants; indeed, one might plausibly infer that they are wholly separate entities, insofar as the John Does are alleged to "have offices located within the State of New York," while Defendants are not. (*Id.*). The Court does, of course, resolve all ambiguities in Plaintiff's favor at this stage of the proceedings; but the TAC provides no indication that Defendants had an employer-employee relationship with the John Doe actors, and the Court cannot speculate concerning facts that are wholly absent from the pleadings. The TAC thus fails to allege negligence predicated on an employer-employee relationship between Defendants and the John Doe actors.

Considering next whether Defendants might nevertheless be vicariously liable for the John Does' actions, even absent any employment relationship, the Court again finds that the TAC fails to allege facts to support such a finding. As discussed above, a defendant may be held liable for the negligence of its independent contractor where the defendant is under a statutory or contractual duty to supervise or perform the relevant tasks; the defendant is responsible for keeping the relevant premises safe; or the work being performed on the defendant's behalf poses inherent dangers, even when performed with care. *Rosenberg*, 79 N.Y.2d at 668. The TAC alleges none of these factors. Plaintiff makes no mention of any statute governing liability for the installation of telecommunications equipment, nor of any contract between Plaintiff and Defendants; Defendants are not alleged to have any responsibility for

16

maintaining safe conditions on the relevant premises (to the contrary, Plaintiff alleges that it itself bears that responsibility); and nothing in the TAC suggests that the installation work performed by the John Does posed inherent danger. Thus a claim for Defendants' vicarious liability cannot be discerned from the TAC.

Finally, the TAC does not state any facts regarding Defendants' hiring, retention, or supervision of the John Doe installers.  The TAC does assert that "Defendants had both actual and constructive notice of the conditions [of the buildings] and/or the conditions have existed for so long a period of time that the Defendants knew or should have known of such conditions."  (TAC ¶ 22). How Defendants, two large telecommunications companies, would or should have known about water leakage that occurred in Plaintiff's buildings *after* their equipment was installed is not explained.  Furthermore, the fact that water damage has been present in Plaintiff's buildings for some time now does not support an inference that Defendants knew or should have known, at the time they hired the John Does to perform the installations, "of the [John Does'] propensity for the conduct which caused the injury."  *Schiffer*, 879 N.Y.S.2d at 522 (citation omitted).  No timeline is given for the installation of the equipment.  Hence one cannot even infer that Defendants should have learned of the John Does' injurious propensities by supervising the earlier installations; as far as one can glean from the TAC, the installations may have all occurred at approximately the same time, leaving no opportunity for the fruits of the John Does' negligence to come to light.  In short, the TAC does not allege facts that

17

suggest direct liability against Defendants for negligent hiring, supervision, or retention, let alone facts sufficient to "nudge[] [Plaintiff's] claim[] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

This is Plaintiff's fourth attempt at pleading, yet the TAC still fails to specify how or why Defendants are allegedly responsible for the negligent installations here at issue.  The Court recognizes that "Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Ideal Steel Supply Corp.*, 652 F.3d at 323 (internal quotation marks omitted).  The TAC fails to notify Defendants of the ground upon which Plaintiff's assertion of Defendants' negligence rests.  The only sentence in the TAC regarding the relationship between Defendants and the direct tortfeasors is so broad as to encompass every possible theory of employer liability, and the TAC contains no supporting facts that would allow the Court to discern which of these theories — if any — might plausibly apply.  Thus, the TAC contains precisely the sort of "speculative" claim proscribed by *Twombly* and its progeny; Defendants' motion to dismiss Plaintiff's negligence claim is therefore granted.

**D.    The Court Dismisses Any Remaining Claims Against the John Doe Defendants**

Plaintiff argues that the John Does have been properly named as parties in this case, and that claims against them should remain active.  (Pl. Opp. 4). In regard to Plaintiff's trespass claim, however, that cause of action fails against the John Does for the reasons discussed in respect to the named

Defendants.  As for Plaintiff's negligence claim, the Court dismisses that cause of action because allowing amendment to name the John Does would be futile: Specifically, substituting in named parties for the John Does would, according to the pleadings, destroy the Court's subject matter jurisdiction over this case. *Cf. Johnson* v. *City of N.Y.*, No. 12 Civ. 4431 (KPF), 2013 WL 6171937, at *8 (S.D.N.Y. Nov. 25, 2013) (granting summary judgment against John Does where granting leave to amend to name the John Does would be futile).

Federal courts have original jurisdiction over civil actions in which the parties have diversity of citizenship and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  Diversity jurisdiction requires complete diversity, meaning that no plaintiff has the same citizenship as any defendant. *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).  While the citizenship of John Does is disregarded for the purposes of ascertaining a court's subject matter jurisdiction over an action removed from state court, *see* 28 U.S.C. § 1441(b)(1), where a plaintiff seeks to substitute a diversity-destroying defendant after removal, district courts "may deny joinder, or permit joinder and remand the action to the State court," *id.* § 1447(e).

Plaintiff has specifically alleged that the John Does "are residents of the State of New York."  (TAC ¶ 5).  The Court recognizes that citizenship is the touchstone for diversity, not residency.  However, "[a]n individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of his domicile" — which in turn determines citizenship.  *BrandAid Mktg. Corp.* v. *Biss*, No. 03 Civ. 5088 (WHP), 2003 WL 21998972, at *2 (S.D.N.Y. Aug. 21,

2003) (quoting *Willis* v. *Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y.
1986)).  Here, the John Doe actors, who allegedly performed the installations,
are alleged to be New York citizens.  Plaintiff also purports to be a New York
citizen.  (TAC ¶ 2).  Thus, rather than waiting for a potential motion to join and,
in the event such motion succeeds, subsequently remanding the matter to
state court, the Court dismisses Plaintiff's negligence claim against the John
Does without prejudice to refiling in state court.[4]

### E.     Defendants' Motions for Attorneys' Fees Are Denied

In its July 27 Order, the Court stated that "[b]ecause Plaintiff's
delinquency has caused some cost to Defendants — albeit not enough
prejudice to deny the request for leave to amend — the Court will entertain
Defendants' applications for costs associated with the initial motion to
dismiss." (Dkt. #48).  The Court has accordingly reviewed Defendants' motions
for attorneys' fees and costs associated with their motions to dismiss the SAC,
and while it recognizes that imposing such fees and costs upon Plaintiff is
within its power, it declines to do so.

---

[4]     The citizenship of the John Does is potentially complicated by the fact that Plaintiff
alleges the John Does as "individuals and/or corporations and/or entities who are
residents of the State of New York."  This is because corporations are not typically
discussed as having "residency" for jurisdictional purposes, but rather are deemed
citizens of the state or states in which they are incorporated and have their principal
place of business or "nerve center."  *Hertz Corp.* v. *Friend*, 559 U.S. 77, 81 (2010); 28
U.S.C. § 1332(c)(1).  However, should Plaintiff seek to substitute a named corporation or
entity for a John Doe, its claim will encounter a separate difficulty, inasmuch as
corporations can only act through their individual employees or contractors, and, just
as with Defendants, the TAC provides no facts indicating how a John Doe corporation
would be liable for the actions of the individuals who actually performed the defective
installations.

Awarding attorneys' fees as a condition of granting leave to amend provides a means to "mitigate the additional expenses that [defendants] … incurred … attributable to plaintiff's counsel's failure to plead his client's case properly." *Glob. Energy & Mgmt., LLC* v. *Xethanol Corp.*, No. 07 Civ. 11049 (NRB), 2009 WL 464449, at *4 (S.D.N.Y. Feb. 24, 2009).  In the present matter, however, the Court has concluded that any additional costs or prejudice to Defendants was minimal in light of the substantial similarity between the Second and Third Amended Complaints, and Defendants' resulting ability to largely recycle the motions prepared for the Second Amended Complaint when responding to the Third.  Furthermore, while ultimately unsuccessful, Plaintiff's amendments to its TAC constituted a good-faith effort to remedy defects in its SAC.  Thus while the Court acknowledges that Defendants may have suffered an inconvenience, and perhaps modest incremental legal fees, as a consequence of Plaintiff's failure to follow proper procedure, it does not believe that further mitigation is warranted.  Defendants' motions for attorneys' fees and costs associated with their motions to dismiss the SAC are therefore denied.

## CONCLUSION

For the reason given in this Opinion, Defendants' motions to dismiss are GRANTED; their motions for attorneys' fees and costs are DENIED; and the remaining negligence claim against John Does 1 through 10 is DISMISSED without prejudice to refiling in state court.  The Clerk of Court is directed to

terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      March 15, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge